SARAH P. DIXON *v.* LUCIUS J. DIXON, GEORGE C. MOSHER, SYLVESTER WARD AND JOHN Q. ADAMS.

*Promissory note.   Principal and surety.*

It is no defence for a surety upon a promissory note, against a holder for value, that he signed and delivered it to his principal with the condition and agreement that it should not be used until another surety should be obtained, and that it was put in circulation without a compliance with this condition, unless knowledge of such condition and agreement be communicated to the holder before he receives the note.

It is well settled that a note received in payment of a pre-existing debt is received and held upon valuable and valid consideration.

If a note be received in payment of a former one, it is not necessary to its validity that the old one should be delivered up at the time the new one is received.

ASSUMPSIT upon a joint and several promissory note, signed by the defendants, and payable to the plaintiff or bearer in one year from date, with interest. None of the defendants made any defence except Adams, who pleaded the general issue and a special plea in bar, setting forth that he signed the note in question as surety for and at the request of the other defendants, upon the express condition and promise between them, that before the note should be delivered to the plaintiff, Jed P. Clark or Daniel H, Onion should be procured by the other defendants to sign it as co-surety with him ; that relying on such condition and promise, he delivered the note to the other defendants for the purpose of having Clark's or Onion's signature obtained thereto as co-surety, before it should be delivered to the plaintiff; but that they delivered it to the plaintiff without obtaining either Clark's or Onion's signature, and without his, Adams', knowledge or consent; and also that at the time the plaintiff received the note she had knowledge that Adams was merely a surety thereon for the other defendants.

To this plea the plaintiff demurred generally, and the county court adjudged it insufficient, to which the defendant Adams excepted.

The cause was tried by the jury upon the general issue, at the March Term, 1858,—BENNETT, J.; presiding,—when it appeared on trial, that at the time of the execution of the note in question, the plaintiff held a note for the same amount, over due, against all the defendants except Adams; that Adams signed the note in suit merely as surety, and without receiving any consideration for so signing; and that this fact was known to the plaintiff, and that Adams did not know when he signed it that it was to be used as a substitute for any other note. The plaintiff gave evidence tending to prove that the note was signed by Adams as surety, at the request of the defendants Mosher and Dixon, without any agreement or condition whatever, and that it was delivered to

her by Mosher, in payment of the note she then held, upon the same day or the day after it was signed by Adams, and that the old note was then given up by her to Mosher.

The defendant Adams gave evidence tending to show that he signed the note at the request of the defendants Dixon and Mosher, and upon the express condition and agreement that, before it should be used, the name of another surety should be procured to it, viz: either that of Dan. H. Onion or Jed P. Clark; that he left the note in the possession of Dixon and Mosher for that purpose, and that they, without procuring any other surety, and without his consent, delivered it to the plaintiff, who took it with notice of the above mentioned condition and agreement between him and the other defendants in regard to procuring another surety. He also introduced evidence tending to show that the old note was not, in fact, given up at the time of the delivery of the new one, but was left in the possession of the plaintiff for several weeks thereafter, and also that before she did give it up she was informed that the defendant claimed the existence of such a condition and agreement between him and the other defendants.

The plaintiff also introduced evidence tending to show that she took the note in question without any knowledge on her part, of any such agreement or condition, if any in fact existed.

Upon this evidence the defendant Adams insisted, and requested the court to charge the jury, first, that the plaintiff had proved no consideration for his promise, and therefore could not recover against him; second, that if the jury found that Adams signed the note with such a condition and agreement as to its use as his evidence tended to show, and that the note was delivered to the plaintiff without a compliance with such condition and agreement, and without Adams' consent, the plaintiff could not recover against him, although she had no notice of such condition and agreement; and third, that if the plaintiff had such notice before she gave up the old note, she could not recover against him, although she had no such notice when she took the new one.

But the court refused so to charge the jury, but did instruct them that the evidence tended to show a sufficient consideration for the note to bind the defendant Adams, and that in order to make a defence for him the jury must not only find that Adams

signed the note as surety for the other defendants, under such a condition and agreement as his evidence tended to show existed, and that this condition and agreement were not complied with ; but also that the plaintiff had notice of such condition and agreement at the time she received the note in suit, in the place of, and in satisfaction of her former note ; and that if she received the note in suit in payment of her former note, it was of no particular consequence when she, in fact, surrendered up that note.

To the refusal of the court to charge as requested, and to the charge as given, the defendant Adams excepted. The jury returned a verdict for the plaintiff, for the amount of the note.

*Geo. F. Edmunds,* for the defendant Adams.

The note never became binding as to Adams. He signed and delivered it to the other defendants, as his special agents, with a limited authority in regard to its use. It had no force as a note against any of the parties until it was delivered. But it was delivered by the other defendants in express disobedience of their instructions from Adams. They had no *title* to the note, so far as Adams' signature was concerned, in their own right, but held it merely as his special agents. It is well settled that if a special agent transcends his authority, he does not bind his principal.

The plaintiff knew that Adams was a mere surety, and she knew also, from the form of the note itself, that it was yet inoperative in the hands of the other defendants, and that they had no other authority to give it a vital existence than such as Adams might have conferred on them. Was she not therefore bound to inquire into the extent of that authority ?

But if it be claimed that possession of the note imports an authority to deliver it, we reply that with much *greater force* can it be claimed that possession of an *escrow* imports authority to deliver it ; or that possession of a deed by the conveyancer, who has prepared it, imports an authority to deliver it ; or that possession by an agent of the chattels of his principal, imports a right to deal with them as with his own. These propositions have but to be mentioned to suggest their unsoundness.

The present case is not at all analogous to the one where the maker of a note, though merely an accommodation signer,

intrusts it to the payee to make a particular use of it. In the latter case, a *bona fide* holder of the note would recover against the maker, though the payee had disobeyed the instructions of the maker as to the disposition and use of the note.

The great distinction between the two cases is, that in the case at bar the other defendants exercised, in the name of Adams, a *naked power* and *authority* which they did not possess, made use of a note to which they had no *title;* while in the other, the payee wrongfully transfers a *title* which he does possess. In the one case, the act is necessarily nugatory without regard to the good faith of the transferee, in the other, the title passes to the transferee if he acts in good faith, and pays value for the note.

These views are supported by the following authorities: *Chamberlin* v. *Hopps*, 8 Vt. 94; *Churchill* v. *Gardner*, 5 Vt. 500; *Bromager* v. *Floyd*, 1 Exch. 32; *Hall* v. *Willson*, 16 Barb. 548; *Marvin* v. *McCullom*, 20 John. 288; *Goss* v. *Whitney*, 24 Vt. 187; *Jarvis* v. *Barker*, 3 Vt. 336; *Lansing* v. *Gaines*, 2 Johns. 300; *Nichols* v. *Nichols*, 28 Vt. 237; *Vallette* v. *Parker*, 6 Wend. 615; *Artcher* v. *Whalen*, 1 Wend. 179; *Cutter* v. *Whittemore*, 10 Mass. 445; *Pawling* v. *United States*, 4 Cranch 219; *Leaf* v. *Gibbs*, 4 Car. & P. 466; *Johnson* v. *Baker*, 4 B. & A. 440; *Thrall* v. *Benedict*, 13 Vt. 248; *Batty* v. *Caswell*, 2 Johns. 48; *Keyes* v. *Seely*, 9 Barb. 214; *Marston* v. *Allen*, 8 M. & W. 494; 1 Smith's Lead. Cases, 250 *et seq.*; Story's Prom. Notes, Secs. 5–117; Byles on Bills, 2.

*H. B. Smith*, for the plaintiff, cited *Chicopee Bank* v. *Chapin*, 8 Met. 40; *Blanchard* v. *Stevens*, 3 Cush. 162; *Atkinson* v. *Brooks*, 26 Vt. 569; Chitty on Bills, 80; *Claremont Bank* v. *Wood*, 10 Vt. 582; *Nash* v. *Skinner*, 12 Vt. 219; *Stoddard* v. *Kimball*, 6 Cush. 469; *Bank of Missouri* v. *Phillips*, 17 Missouri; S. C., 14 U. S. Dig. 491; *Farmer's & Mechanic's Bank* v. *Rathbun*, 26 Vt. 19; 1 Am. Lead. Cases 332; 2 *id.* 303.

BARRETT, J. This is an action upon a joint and several promissory note, payable to the plaintiff or bearer, in one year, with interest, and executed by the defendants.

The verdict, under the charge, finds that the note was delivered to the plaintiff in payment of another note which she then held,

and which was executed by all the present defendants except Adams, who alone is defending this suit.

He is defending on the alleged ground that he signed as surety for the other makers of the note, but received no consideration for so doing; that at the time of signing it was agreed that before the note should be used, another person should be procured to sign it as surety; that it was used without such other surety being procured; that the plaintiff had notice or knowledge of these facts when she received the note, and that she did not surrender the note then held by her till several weeks after receiving the note in suit.

The charge of the court, in connection with the evidence, presents the question, whether the plaintiff having received the note in payment of a pre-existing note, with knowledge that Adams had signed it as surety, but without notice or knowledge of the alleged agreement between Adams and the other signers as to obtaining another surety, is to be affected in her right of recovery against Adams, by the fact of there being such an agreement.

It is understood to be well settled that a note, received in payment of a pre-existing debt, is received and held upon valuable and valid consideration. The jury have found that the note in suit was so received. It having been so received, we do not perceive how it could make any difference with the plaintiff's rights as to this note, whether the old note was or was not surrendered at the time of receiving the new note. If she received it in payment, she had the right to hold it in payment, and while she should so hold it, it would operate as payment. She alone would be entitled to repudiate or deny its operation as payment. And this she could not do, except for the reason that it was false or unavailing paper at the time she received it.

As the case is thus presented by the evidence and charge, it seems to stand substantially upon the same point as the case of *The Passumpsic Bank* v. *Goss & Page*, decided at the general term, 1858; ante page 315. The court there held, upon full argument and careful consideration, that the payee could not be defeated of his right to recover against a surety by reason of such an agreement between him and the other makers, of which the payee had no knowledge.

We have taken occasion to review that decision with the aid of the full briefs and numerous books and cases cited in this case, and we find no occasion to be dissatisfied with the result there arrived at.

The plea that was adjudged insufficient on demurrer, concedes the plaintiff to be the payee and holder of the note, without imputing a want of consideration or bad faith, or notice, or knowledge on her part of any facts affecting the validity or honesty of the note as against Adams, but seeks to charge her with the consequences of the bad faith of the other defendants, by reason of the sole fact that she received the note with knowledge that Adams was surety of the other makers.

Thus the plea presents the same question that is presented by the evidence and charge of the court. We think the plea insufficient, regarding the decision of the case, above referred to, as controlling this.

The judgment of the county court is affirmed.