### MICHAEL QUINN *v.* E. R. HARD AND C. J. LANE.

*Promissory Note. Principal and Surety. Fraud.*

L. procured H. to sign a note to the plaintiff as surety for him, L., by representing that he could use the money to be obtained thereon profitably in a business operation. L. delivered the note to the plaintiff in payment of a pre-existing debt, and made the note and obtained H. to sign it with this intention. L. was insolvent and wholly destitute of means, and has been ever since. H. relied upon L.'s representations and supposed he would realize from the operation and pay the note at maturity, and would not have signed it had he known the use L. intended to make of it. *Held* that H. was liable thereon to the plaintiff, it not appearing that the plaintiff knew of the fraud.

ASSUMPSIT upon a promissory note. Plea, the general issue. Trial by the court, September term, 1870, WHEELER, J., presiding.

Upon trial it appeared that on the 23d day of September, 1869, at Rutland, the plaintiff lent $200 to the defendant Lane, to be paid the next week. Lane did not pay it the next week, and the 27th day of October, 1869, the plaintiff went to Burlington to procure payment. Lane, in order to get a note with which to pay the plaintiff, applied to the defendant Hard, and represented that he wished to use money in an operation that he could make immediately profitable, and that he had found a friend who would let him have the money if he could get an endorser. Lane was insolvent, and wholly without property, but Hard relied upon what he said about raising the money, and the use he intended to make of it, and supposed that Lane would realize the money from

the operation, and pay the note at maturity, and upon that reliance signed a note to the plaintiff as surety for Lane for $200, payable in sixty days at the First National Bank of Rutland, which is the note in suit. Lane delivered the note to the plaintiff in payment of the $200 previously borrowed. Hard would not have signed the note with Lane if he had known the use Lane intended to put it to. Lane has been insolvent and without property ever since the note was given. The note has not been paid. Upon these facts the court rendered judgment for the plaintiff against both defendants for the note and interest, to which the defendant Hard excepted.

*E. R. Hard, pro se.*

The misrepresentations of Lane, whereby the defendant Hard was induced to execute the note in question, were of such a character as to vitiate the promise of Hard, if Lane himself were attempting to enforce performance of it; for they had a material relation to the expediency and safety of executing the note as surety for Lane.

Regarding plaintiff as a direct party to the original contract, sought to be enforced in this action, and not as standing in the position of an innocent holder for value, of the note, he is as much affected by the fraud of Lane as Lane himself would be, unless, indeed, the defendant Hard is shown to have been guilty of some laches in the matter, whereby the plaintiff will sustain injury if the defence is successful, which will not be claimed. *F. & M. Bank* v. *Hathaway*, 36 Vt., 539.

Conceding to the plaintiff all the rights and immunities which belong to an innocent holder of negotiable paper, he is not a holder *for value.* The fact that Lane was insolvent and wholly without property at the time of the execution of the note, and has so continued ever since, distinguishes this case from those in which it has been held that the endorsee of a promissory note, who takes it in payment for a pre-existing debt, is a holder for value. *Atkinson* v. *Brooks*, 26 Vt., 569.

But even if the plaintiff can be considered a holder for value, he is not, upon the facts found by the court below, entitled to re-

cover, because it does not appear that he took the note *bona fide*, and without notice of the fraud practiced upon the surety to induce him to sign. *Atkinson* v. *Brooks, supra ; Mills* v. *Barber*, 1 M. & W., 425 ; *Hutchinson* v. *Boggs*, 28 Penn., 294 ; *Paton* v. *Coit*, 5 Mich., 505 ; *Bissell* v. *Morgan*, 11 Cush., 198.

*Edgerton & Nicholson*, for the plaintiff.

The opinion of the court was delivered by

PECK, J. The pre-existing debt of Lane to the plaintiff was a good consideration for the note, both as to Lane the principal, and as to Hard the surety ; especially as it appears that the note was delivered and accepted in *payment* of that debt. Not only was the original debt against Lane extinguished by the note received in payment, but the credit was extended sixty days, the period the note had to run. An agreement by a creditor with a third person to forbear the collection of a debt against his debtor for a specified time, is a good consideration for the promise of such third person to pay the debt. But it is urged in behalf of the defendant Hard, that as Lane, by false and fraudulent representations, induced Hard to sign the note, and as Lane at that time was and ever since has been insolvent and destitute of property, the plaintiff has suffered nothing by relying on the note, and therefore Hard ought not to be held liable. Hard, by signing the note and entrusting it with Lane to be delivered, gave to Lane an apparent authority to use the note for the purpose to which it was applied, and the plaintiff was justified in accepting it as he did upon the faith that Lane had such authority from Hard. The note in the hands of Lane was complete, and payable in terms to the plaintiff, and in fact executed both by Hard and Lane for the purpose of being delivered to the plaintiff. The case therefore differs from that class of cases where the note was incomplete, and perverted by the principal to a use different from that to which the paper itself indicated it was designed, and in violation of the agreement with the surety. In this case the plaintiff having a debt against Lane overdue and having applied to him for payment, Lane thereupon procures the note in question

48

payable to the plaintiff, and presents it to him in payment of the debt, which the plaintiff accepts,—Hard, when he signed the note, knowing that Lane was to deliver it to the plaintiff as a valid note upon which he was to become liable. There was nothing in all this to indicate a want of authority in Lane to deliver the note to the plaintiff in consideration of the indebtedness, or to put the plaintiff on inquiry as to the means by which Lane had induced Hard to sign the note. The plaintiff, as he had a right to do, confided in the note; and the defendant Hard having confided in the representations of Lane by which he was induced to sign the note, Hard, and not the plaintiff, took the risk of the truth of such representations. After the decisions which have been made in this state in cases of this character, and cases involving the same principle, no extensive examination of authorities is necessary. In *Passumpsic Bank* v. *Goss & Page*, 31 Vt., 315, it was expressly agreed by Goss the principal, with Page the surety, when the latter signed the note and entrusted it with the former, that he, Goss, would not use it unless he procured the signature of one Brown as co-surety; and it was held that Page was liable, although Goss delivered the note in violation of the agreement, without the name of Brown, or of any one in his stead, upon it. If a delivery of the note in violation of such an agreement binds the surety, it is more clear that a delivery of the note merely upon a different consideration, as in this case, from that for which the surety was induced to believe it was to be delivered, is no defense. It is true that in that case the consideration was advanced on the delivery of the note, but that does not distinguish the case from this in principle. The consideration in the case at bar is of a character that, according to commercial law applicable to negotiable paper, would protect an endorsee upon such consideration from a defense by the maker which might be available against the payee. This being so, it must clearly be a protection to the payee against defenses of this kind, who receives the note without notice; and the insolvency of the original debtor at the date of the note does not constitute an exception. In *Dixon* v. *Dixon*, 31 Vt., 450, there was an agreement with the surety, Adams, that the principals would not deliver the note unless one Clark or one

Onion should be procured by them to sign it as co-surety; and the note was delivered to the plaintiff, the payee, in violation of that agreement, the plaintiff knowing at the time that the defendant Adams was surety for the other signers. It also appeared in that case that the note was delivered in payment of a pre-existing debt to the plaintiff, of the other signers of the note, for which Adams was not liable. Adams, the surety, was held bound by the note. In that case it appeared that Adams did not know, when he signed the note, that it was to be used as a substitute for another note. There is no distinction between that case and the case at bar that can favor the defense in this case. We are referred to *Farmers & Mechanics' Bank* v. *Hathaway*, 36 Vt., 539, in support of this defense. In that case it will be seen that the decision turned on the very point in which that case differs from this. The note was payable to the Farmers and Mechanics' Bank, for $150, not negotiable. Osgood was the principal and Hathaway the surety, and the note was made for the purpose of obtaining a discount at the bank. Osgood procured Hathaway to sign the note, under an agreement that he would get the note discounted at the bank, and bring back to the defendant Hathaway $125 in payment of that amount which Osgood then owed Hathaway. Osgood not being able to get the note discounted, he, as the court regarded the facts, passed the note to Adams, to apply on an old debt he owed him; although after Adams obtained the note he got it discounted at the bank and paid it at maturity, and brought the suit in the name of the bank for his benefit. It was decided that the surety was not liable; but in the decision the court fully recognize the correctness of the decision in *Pass. Bank* v. *Goss & Page*, and in *Dixon* v. *Dixon et als.* BARRETT, J., in delivering the opinion of the court, says: "The note not being payable to Adams, distinguishes this case from the case of *Pass. Bank* v. *Goss*, and of *Dixon* v. *Dixon*. Though it was a perfected instrument, it did not import that it was primarily designed to be delivered to him, and thus carry with it the apparent right to receive it, irrespective of any unknown agreement between the makers." Again he says: "When therefore he [Adams] took it of the principal maker to apply on an old debt,

we think he should be regarded as assuming the peril of the perversion of the note from the purpose of it, *as shown by the instrument itself.*" In the case before us, the instrument did "import that it was primarily designed to be delivered to him [the plaintiff], and thus carry with it the apparent right to receive it irrespective of any unknown agreement between the makers;" being in terms payable to the plaintiff.

But it is insisted that it does not appear that the plaintiff took the note *bona fide* and without notice of the fraud practiced upon the surety to induce him to sign. On this point we are referred by the defendants' counsel to cases on the question of the burden of proof in relation to the consideration paid by the plaintiff, and the circumstances under which he acquired title to the instrument, in actions by an endorsee against the maker, when the defendant proves what would constitute a defense as against the payee. In what cases, and to what extent, the burden of proof is thrown upon the plaintiff by proof of such defense, does not appear to be very clearly settled by the books; at least the decisions on the question are far from uniform. In many cases the question depends upon the character of the defense interposed. The cases cited by defendants' counsel are mainly upon the burden of proof upon the question whether the endorsee was holder for valuable consideration. But it is unnecessary to define the rule on that subject, as the plaintiff is not an endorsee, and is not necessarily subject to the same rule. So far as the question of consideration is concerned, the case shows that the plaintiff was a holder for value, as already stated. Among the cases cited by the defendant is *Paton* v. *Coit et al.*, 5 Mich., 505, action by endorsee of bill of exchange against acceptor. The defense was illegality of the consideration for the acceptance, the statute in terms making such paper illegal and void, and forbidding any action to be maintained upon it " *except when brought by a bona fide holder who has received the same upon a valuable and fair consideration without notice or knowledge,*" &c. The court held that as the amount of consideration given by the plaintiff was an affirmative fact peculiarly within his own knowledge, and being necessary to bring the plaintiff's case within the exception of the statute, it should be

proved by him.   But on the subject of want of notice, it is said in the opinion in that case : " We do not propose to give a definite opinion upon the point whether the illegality being first shown, the burden of proof in this case would have rested upon the plaintiff to show actual want of notice ; this might be requiring actual proof of a negative.   But we are inclined to the opinion that they should have shown the nature of the transaction accompanying the transfer ; and if that disclosed no suspicion of such notice, it might make a *prima facie* case of want of notice, and throw upon the defendant the burden of proving notice."   Whether this is the true rule as between an endorsee and maker or acceptor, or not, nothing more could be required of the plaintiff in the case at bar than what is indicated by the court in the case last referred to ; and the occasion, the consideration, and circumstances of the transaction by which the plaintiff acquired title to the note as disclosed in the case, fully come up to the requirement in that case.   There being nothing in the facts to create a suspicion of notice to plaintiff of any fraud or any suspicion of bad faith on his part, it was for the defendant, if he imputed any such thing, to prove it.   In *Bank of State of Missouri* v. *Phillips,* 17 Mo., 29, it was decided that it was no defense for an endorser who is sued upon a note, that he endorsed it upon the express condition that it should also be endorsed by another person before being delivered, when it does not appear that the plaintiff knew of the condition. The plaintiff recovered in that case without any proof of want of notice of the condition on which the defendant endorsed the paper, and we see no legal reason why the plaintiff should not recover in this case.

Judgment affirmed.