————o————

SALATHIEL B. AYRES, Plaintiff in Error, vs. JOHN M. MILROY, Defendant in Error.

1. *Bills and notes—Surety—Agreement as to co-surety—Liability of surety, etc.*— Where one becomes surety on a non-negotiable promissory note on the express condition that another shall be procured as co-surety, and the latter fails to join, the surety will not be liable although the note is in the hands of a holder having no notice of the agreement. As to the surety, while the condition remains· unperformed the instrument is merely an escrow and there is no delivery.

PER NAPTON, J., SHERWOOD, J., CONCURRING.

2. *Bills and notes—Surety—Agreement to obtain co-surety—Notice—Maker, agent of surety.*—Although a surety upon a note is induced to sign upon the promise of the maker, that a co-surety shall be joined, yet if nothing on the face of the paper imparts notice to the holder or puts him on inquiry as to such agreement, no fault attaches to the latter, and the surety must run the risk of the fraud of his own agent.

*Error to Louisiana Court of Common Pleas.*

*Minor & Foster with Anderson & Niel,* for Plaintiff in Error.

I. If defendant signed the note as surety at the request of the maker and delivered it to him on the condition that he should obtain Dyer's name, and the maker, without securing it, delivered the note to the payee, who had received no notice of the condition upon which defendant signed the note, the latter is liable on the note. . (Farrell vs. Hunter, 21 Mo., 436.)

II. As the note was absolute on its face when plaintiff received it, parol testimony was inadmissible to vary or contra-

dict it. (Smith's Adm'r vs. Thomas, 29 Mo., 307; Blackburn vs. Harrison, 37 Mo., 303.)

*Fagg & Dyer*, for Defendant in Error.

WAGNER, Judge, delivered the opinion of the court.

This was an action commenced upon a non-negotiable promissory note against the defendant.

The defense set up in the answer was, that Milroy, the defendant, signed the note as surety for one Jones upon the express understanding, that Jones was also to procure the signature of D. P. Dyer, as an additional security, and, that if the name of Dyer was not obtained, then he was not bound; that Jones did not get Dyer to sign the note, and that plaintiff had full notice of this condition before he received the note.

It seems that Jones took the note, and, without getting Dyer to sign it, he delivered the same to plaintiff. The court below found for the defendant, but its verdict appears to have been based on the fact, that the plaintiff had notice of the condition upon which defendant signed the note. It is now contended, that there was no evidence adduced to show that plaintiff had any such notice, and if there was no such notice, then the verdict and judgment are against the law.

An examination of the record forces upon my mind the conclusion, that there was, in fact, nothing to bring notice home to the plaintiff of the agreement upon which the note was signed by the defendant. But it is conceded throughout the whole case, that there was such an understanding, and that defendant signed the note as surety upon the express condition, that Dyer was also to sign it, and that Jones was not to deliver it to the payee till Dyer's signature was obtained.

The question then is, whether the defendant is liable, where the condition was not complied with, though the plaintiff had no notice of the fact when he took the note.

In the case of negotiable or commercial paper, it is very clear that the defense would not be held good.

In a suit upon a note of that character it was expressly ad-

judged by this court in the Bank, etc. vs. Phillips, 17 Mo., 29, that it was no defense for an indorser who was sued upon a note, that he indorsed it upon the express condition, that it should also be indorsed by another person, when it did not appear that the plaintiff knew of the condition.

In making this line of defense there is a clear distinction recognized between bonds or other instruments that are not negotiable, and those which are negotiable.

The question here presented has often been before the courts, and the almost universal holding has been, that where a bond or other instrument for the payment of money is executed by a surety on the condition that another person shall also sign it as surety, and that if not so signed, then the principal obligor shall not deliver it, and the obligor does deliver it in violation of this agreement, then the surety who signed will not be bound.

In the case of State vs. Sandusky, 46 Mo., 377, we quoted approvingly the rule laid down by the Supreme Court of Mass., in Cutter vs. Whittemore, 10 Mass., 442, where Jackson, J., speaking for the court, said: "If there had been any agreement or condition at the time, that it should not be delivered as their deed unless a third person named as obligor should also execute it, this would show that it was only delivered as an escrow."

In Linn County vs. Farris, 52 Mo., 75, the principal procured the signature of a surety on the bond, the surety signing it on condition, that another person should likewise be procured to it, but the other person's signature was not procured and his name was forged on the bond, and the principal then delivered it. In an action on the bond it was decided there was no delivery as to the surety, and that the bond was void as to him.

In the case of Lovett vs. Adams. 3 Wend., 380, the defense was, that the bond had never been delivered by the obligors, and the fact was offered to be proved by a co-obligor. The witness was rejected. In delivering the opinion of court, Savage, C. J., said: If a bond be signed and put into the

hands of the obligee or a third person, on the condition that it shall become obligatory upon the performance of some act by the obligee or any other person, the paper signed does not become the bond of the party signing the same, until the condition precedent be performed. Until then there is no tract."

In Bronson vs. Noyes, 7 Wend., 188, a bond was given to the sheriff on an arrest. The sheriff said to the party signing, "sign the bond and he will get some other person to sign with you or get other bail in the morning." It was said by the court (Nelson, J.,) "If it was the agreement of the parties at the time it was put into the hands of the officer, that it was not to be delivered to take effect until additional bail was procured, then, whatever might be the intention of the defendant, the bond would be inoperative and have no legal existence."

In Leaf vs. Gibbs, 4 Car. & P., 466, it was decided, that when a person signs a promissory note on a representation that others are to join, and one afterwards refuses to sign, the payees cannot recover in an action on the note against the person who signed it, unless the jury are satisfied that such person, knowing the facts and being aware of his rights, had consented to waive his objection.

Ch. J. Tindal, in summing up the case to the jury, uses this language : "It seems from the evidence of the plaintiff's witnesses, that the defendant was told that his mother was to join, and therefore the obtaining of her signature was a condition, which, if not carried into execution, would justify the defendant in withdrawing, and if matters have not been altered since the signing of the note, the defendant will not be liable."

There was a verdict for defendant.

In Perry vs. Patterson, 5 Humph., 133, it was held, that where a bill was delivered to the creditor by an obligor as surety, upon condition that another should sign as co-surety, it was delivered as an escrow, and was not obligatory unless the condition was complied with, or unless he agreed that it should be obligatory upon him after his knowledge of the refusal of the other to sign as co-surety.

It was also further held, that when delivered as an escrow by a surety to the principal obligor, and by the latter to the creditor absolutely and without condition, the ignorance of the creditor does not discharge the condition and constitute the delivery a valid delivery. It was the business of the creditor to have informed himself of the facts connected with the delivery.

The court observes, "the law upon this point is settled beyond controversy, and needs at this day no investigation." So in Alabama (Bibb vs. Reid, 3 Ala., 88) it was decided, that a bond may be delivered conditionally to a co-obligor, and will not be operative as a deed of the party until the condition is performed.

The court speaking through Ormond, J., who wrote the opinion, say : "We are satisfied that on principle there can be difference between a conditional delivery to a stranger or a co-obligor ; that in either case the deed cannot be operative until the condition is performed, and such is clearly the weight of authority at the present day."

In the State Bank at Trenton, vs. Evans, 3 Green, (N. J.) 155, the subscribing witness to a bond testified, that at the time of its execution by the defendant he said : "This bond is not to be delivered till signed by all the persons named therein ;" and upon inspection of the bond it appeared, that one of the obligors had not signed it. It was held, that the bond could not be received in evidence. It was also decided in the same case, that whether a party says, "I deliver this writing as my deed in the confidence that you will not deliver it to the grantee until a certain condition be performed," or whether he says, "I deliver it to you as an escrow, to take effect as my deed upon a certain matter being done," it is in either case an escrow, and will be inoperative in the hands of the party, by whatever means he may get possession of the instrument, until the condition is performed. It is the performance of the condition, and not the second delivery, that gives it vitality and existence as a deed. In this case the bond was delivered to the obligor, for whose benefit it was

signed by the defendants. The same condition was made a. part of the execution as in the case under consideration, and it was not to be used until signed by all,who, by the arrangement,were to become parties to it. Ch. J. Hornblower, who delivered the opinion of the court, after reviewing many of the authorities, remarks: "It is evident that the word stranger is used by Lord Coke in opposition to the party to whom the deed is made. A delivery to a co-obligor without words would give no more effect to the instrument than delivery to a stranger with words." Ryerson, J. also delivered an opinion, and argued that there was no delivery; as delivery implied, that the party,who had sealed, had given up control of the writing to, and for the use of, the other party. He said "the intention to deliver,which is the essence of the transaction, is wanting. The intention to deliver this writing was never formed, but one quite different."   *   *   *

A mere parting with the actual possession of a writing is very different from a legal delivery,which is to give it operation as a deed.

Delivery is necessary to the complete execution of a promissory note, and if the payee obtain possession thereof by fraud or any unauthorized act, he cannot maintain an action on it. (Carter vs. McClintock, 29 Mo., 464.) There must not only be a delivery, but it must be with an intention to deliver, and by one who has a right to deliver.

In Pepper vs. The State, 22 Ind., 399, it is held, that where a bond is presented by the principal in it to several persons, and their signatures as sureties for him are solicited by him, and he represents to them severally, that before its delivery he will procure the signatures of a certain number of other persons as sureties, or of certain named persons, and some of them are induced by such representations to sign it, and others sign it upon condition that such other signatures shall be procured, and such other signatures are not procured, these persons who signed upon condition may show these facts in defense to an action on the bond.

So in the case of The People vs. Bostwick, 43 Barb., 9,

where a bond for the payment of money was executed by several persons at the same time, as sureties, upon the representation that another person would sign it as co-security, and with the understanding that one of the obligors was to take the bond, but was not to deliver or use it, until after it was signed by the other person ; it appeared, that some of the sureties would not have signed the bond, except on the condition that the additional surety should be obtained, and that they did not otherwise authorize its delivery. The obligor, to whom the bond was given, delivered the same to the obligee without having procured the signature of the other designated surety. The court held, that there was no valid delivery of the bond—that it was incomplete, and the transaction was not consummated—and that the condition, on which the instrument was executed, not having been performed, the obligors were not liable.

· This last case was affirmed on appeal in 32 N. Y. 445, and Denio J. there said, that "the principle, that where one of two innocent parties must suffer, he, who has put it in the power of a third person to commit the fraud, must sustain the loss, is not one of universal application, if the language be taken in a popular sense. In such cases the one, who claims the benefit of the rule, must not himself be guilty of negligence."

The cases just cited from 22 Ind. and 43 Barb. contain exhaustive and elaborate reviews of the authorities on the question, and they will be found overwhelmingly to sustain the views herein presented. Indeed, with the exception of Millett vs. Parker, 2 Met. Ky., 608, I have found no direct case to the contrary. The same doctrine seems to be settled in the Supreme Court of the United States. In Pawling vs. The United States, 4 Cranch., 219, it was held, that a bond may be delivered as an escrow by the surety to the principal obligor, and if one of the obligors at the time of executing the bond, in the presence of the obligors, say, "we acknowledge the instrument, but others are to sign it," this is evidence from which the jury may infer a delivery as an escrow by all the obligors who are present.

In the United States vs. Leffler, 11 Pet., 86, in an action of debt upon a joint and several bond, the principal had confessed a judgment for the amount. The United States proceeded against the other defendants, and upon the trial the principal in the bond, having been released by his co-obligors, was offered by the defendants, and admitted by the court, as a witness, to prove that one of the co-obligors had executed the bond on condition that others would execute it, which had not been done. The Circuit Court admitted the evidence, and it was held on appeal, that there was no error in the decision on the trial.

The case directly involved the principle now presented for consideration and is an authority in favor of the doctrine that such a defense as is interposed in the present case is available.

The plaintiff here occupies the position of taking a security, to which the party giving it had no title.

The defendant was merely a surety, and derived no benefit from the contract. If the rule of principal and agent applied, then the defendant would only be liable for such acts as he authorized.

The power conferred in this case was conditional, and the condition not being performed upon which its exercise depended, and, it being entirely unauthorized, the principal would not be bound. The rule is settled, that an agent cannot bind a party contrary to his instructions, and a special authority must be strictly pursued.

In the case at bar, there was no delivery of the note, upon which this action was brought, by the surety who now defends. It was simply left with Jones, on condition that he should not use it for the purposes intended until after he had obtained the signature of another party. It was therefore incomplete, and the transaction was not consummated. Under such circumstances, both upon principle and authority, the surety who signed the note is not liable until the condition is fulfilled.

I am of the opinion therefore that the judgment should be

affirmed. The other Judges concur, except Judge Sherwood, who is absent.

Separate opinion of Judge NAPTON.

I do not concur in this opinion, though there is authority tending to support the conclusion reached. If the payee has knowledge of the arrangement for other sureties, or if there are other circumstances connected with the execution of the note to put him on inquiry, the rule announced may be correct, and I think is; but where there is nothing on the face of the paper indicating that other sureties were expected to become parties to the instrument, and no fact brought to the knowledge of the payee or obligee, before he accepts the instrument, calculated to put him on his guard in respect to that point, and which would naturally have led a prudent man, interested in the opposite direction, to make the inquiry before accepting the security, the fault cannot be said to rest to any extent on the obligee or payee. (Ins. Co. vs. Brooks, 12 Am. Law Reg., 399.) And therefore the surety must run the risk of the fraud of his own agent. Most of the cases cited are upon official bonds, or bonds for the payment of money, and the doctrine of special agency is relied on to make such conditional delivery by the surety to his principal, as merely making the deed an escrow; but this doctrine would manifestly apply as well to negotiable paper, and it has never been pretended, that negotiable paper is subject to such hidden defenses. I concur in affirming the judgment. Judge Sherwood concurs with me.