# CHARLESTON.

LONG *v.* CAMPBELL *et al.*

Submitted January 28, 1893.—Decided March 22, 1893.

| | |
|---|---|
| 37 | 665 |
| 40 | 682 |
| 37 | 665 |
| 42 | 417 |
| 37 | 665 |
| 46 | 124 |
| 46 | 125 |
| 46 | 126 |
| 37 | 665 |
| 53 | 129 |
| d53 | 130 |
| 53 | 133 |
| 53 | 142 |
| 37 | 665 |
| f61 | 394 |
| 37 | 665 |
| 64 | 10 |
| 64 | 84 |
| f64 | 87 |

1. NAME.
   A middle name is generally no part of the name of a person.

2. VARIANCE—DECLARATION—REVERSAL—PLEADING.
   If there be a variance, as to the middle name of the payee of a note, between the description of the note in the declaration and the note itself, and such variance would even be deemed material, and it is not taken advantage of in some way before judgment, it will not be ground for reversal of the judgment, being cured by section 3, c. 134, of the Code. This is so, though the judgment was rendered upon defendant's demurrer to the plaintiff's evidence.

3. VARIANCE—DECLARATION—REVERSAL—PLEADING.
   If the demand in the declaration in an action of debt be for less than the right of recovery shown by the note described in it, it would be disregarded on demurrer by reason of section 29, c. 125, and as the variance does not aggrieve the defendant, but is to his benefit; and also, in the absence of a demurrer, it is cured after judgment by section 3, c. 134, of the Code.

4. VARIANCE—DECLARATION—REVERSAL—PLEADING.

If a declaration describe a note of several parties as several, while the note is joint and several, and no objection is made on account of the variance before judgment, though it be rendered on such demurrer to evidence, it is unavailing to reverse the judgment by reason of section 3, c. 134, of the Code.

5. PROMISSORY NOTE—INDORSERS—GUARANTORS.

Parties make a non-negotiable note, and other parties put their names on its back. It is blank as to payee's name, and is to be filled with the name of the person who should furnish money upon it. The parties intend it to be used to raise money upon it. It is delivered to one of the makers to be so used. The name of the party agreeing to furnish money upon it is inserted in it as payee, and it is delivered to him, he furnishing the money upon it. He has right to treat all as original promisors or makers, or some as makers and others as guarantors, as he chooses, and sue them as such.

6. PROMISSORY NOTE—INDORSERS—GUARANTORS.

No understanding between parties making and so indorsing the note, that those so indorsing it shall be liable only as guarantors, will avail against the payee, unless before delivery of the note he knows of such understanding.

J. B. LAIDLEY for plaintiff in error:

I.—*The allegata and probata, in matters of substance, must substantially agree; in matters of description must exactly agree.*—175 My. Fed. Dec. 3267 ; 3 Rob. Pr. (New) 563, 558 ; 1 Iredell 26 ; 1 T. R. 447 ; 9 East 157 ; Green. Ev. P"t. 2, ch. 2 ; 41 Am. Dec. 128 ; 74 Am. Dec. 77 ; 4 Wall. 642 ; 91 U. S. 294 ; 6 Leigh 61 ; 6 Rand. 551 ; 71 Am. Dec. 347 ; 10 East 83 ; 2 Spears 46 ; 29 Am. Dec. 126 ; 14 Pet. 43 ; 1 Cranch 283 ; 7 Cranch 208 ; 3 Call. 378 ; 65 Am. Dec. 387, 6 Leigh 316 ; 2 Cranch 229 ; 27 W. Va. 436 ; 4 Call. 217 ; 3 W. Va. 285 ; 8 W. Va. 475 ; 8 W. Va. 568 ; Hempst. 294 ; 7 Taunt. 385 ; 3 Taunt. 504 ; Lutw. 275 ; Willes 554 ; Cro. Jac. 640 ; Cro. Jac. 558 ; Cro. Eliz. 897 ; 34 Hen. VI, 19 Pl. 36 ; 3 Hen. VI 25 Pl. 6.

II.—*A joint action does not lie, in this State, against the makers and indorsers of a non-negotiable note.*—Code c. 99, ss. 7, 11 ; 2 Rob. Pr. (New) 136 ; 2 Dan. Neg. Inst. §§ 1757, 1754 ; 1 Dan. Neg. Inst. §§ 709, 713c, 714 ; 1 Brandt Sur. and Guar. c. 7, §. 176 ; 2 Ran. Com'l. Paper, § 838 ; Sto. Bills, § 215 ; Sto. Notes, § 487 ; Chit.

§ 362; 2 Add. Conts. (8th Ed.) 217; Id. 229, 230; 1 Dan. Neg. Inst. §§ 666, 688, 669, 671; 1 B. & A. 696; 1 Salk. 132; 33 Gratt. 29; 19 Gratt. 418; 3 East. 481; 12 Wheat. 313; 9 Pick. 547; 1 Gratt. 36; 11 Ohio 62; 1 Brandt Sur. and Guar. ch. 7, § 185, 260; 2 Dan. Neg. Inst. § 995 (b), 902; 21 Kan. 555; 22 W. Va. 142; 17 W. Va. 779; 10 W. Va. 470; 4 W. Va. 29; 6 Gratt. 633; 6 Call 5; 2 W. Va. 13; 7 Gratt. 189.

H. R. Howard and Brown, Jackson & Knight for defendant in error cited 6 Gratt. 130; 2 Gratt. 354; 24 Gratt. 325; 1 Wash. 72; Id. 257; 22 Gratt. 308; 2 Munf. 510; 3 Munf. 168; 4 Rand. 359; 3 Pet. 1; 4 Watt. 329; 9 Pa. 32; 31 Minn. 385; 122 Ill. 583; 78 Ia. 519; 12 Ark. 622; 83 Ala. 79; 52 Ind. 52; 56 Cal. 442; 12 Mo. App. 531; 1 Hill (N. Y.) 102; 28 N. H. 235; 5 Johns. (N. Y.) 84; 2 Aik. (Vt.) 413; 8 Tex. 376; Code, c. 134, s. 3; 4 Min. Inst. 814; Bar. Pr. 107; 24 Gratt. 138; Code, c. 131, s. 8; 34 W. Va. 252; 10 W. Va. 116; 12 W. Va. 525; Id. 695; 7 Gratt. 189; 6 Gratt. 633; 8 Leigh 43; 11 Gratt. 822; 5 Rich (S. C.) 305; 52 Rich 17; 1 Par. Cont. 243; Sto. Prom. Notes, §§ 473, 475; Rand. Com. Paper §§ 66, 829; 1 Dan. Neg. Instr. § 713a, and note; 8 Leigh 43; 11 Gratt. 822; 18 Mo. 74; 45 Mo. 104; 48 Mo. 71; 51 Mo. 169; 24 Ark. 511; 30 Me. 310; 31 Me. 536; 2 Houst. 79; 44 Me. 433; 35 Md. 262; 31 Mich. 150; 7 Minn. 446; 22 How. (U. S.) 341; 6 R. I. 505; 95 U. S. 95; 37 Md. 352; 3 Col. 136; 26 Wis. 181.

E. S. Doolittle of counsel for plaintiff in error cited Greenl. Ev. §§ 51, 56, 58, 63; 3 H. & M. 219; 3 Leigh 250; 7 Cr. 208; 3 Cr. 229; 7 Leigh 660; 6 Leigh 318; 4 Min. Inst. 578; 24 Gratt. 146; 17 W. Va. 779; 4 W. Va. 40; 2 W. Va. 13; Dan. Neg. Inst. §§ 902, 1769, 1787, 1988; Id. §§ 713a, 713b, 713c, 713d, 713e; 8 Leigh 43; 11 Gratt. 822; 6 Gratt. 633; 7 Gratt. 189; 18 Gratt. 200; 3 Mich. 193; 11 Metc. 563; 5 Mass. 358; 9 Mass. 314; 8 Pick. 423; Dan. Neg. Inst. §§ 622, 658, 662, 1007, 1012, 1576; 2 Rob. Pr. 136; 2 Cal. 485; 34 Cal. 673; 46 Me. 176; 53 Me. 154; 5 Ad. & El. 436; 34 Kan. 414; 8 Kan. 32; Brandt Sur. and Guar. § 176; L. Cas. 112; Bigl. Notes and Bills, 45; 1 Ames Notes and Bills, 271.

Brannon, Judge:

James W. Long brought an action of debt against E. M. Campbell and others; and upon a demurrer by the defendants to the plaintiff's evidence judgment was rendered for the plaintiff; and the defendants sued out this writ of error.

The first point made by plaintiffs in error against the judgment is based on three alleged variances between the allegations and proofs. One of such variances is that the declaration describes a note as made to the plaintiff suing by the name of James W. Long, while the note produced in evidence is one to James Long. A middle name, or its initial, is no part of a name. *Franklin* v. *Talmadge*, 5 Johns. 84, citing Co. Litt. 3*a*; *Rex* v. *Newman*, 1 Ld. Raym. 562; Vin. Abr. tit. "Misnomer," p. 6, pl. 5, 6.

For purposes of identification the middle name may be very important; as where the question is which one of two men of the same name, except that they have different middle names, or only one has a middle name, did a certain act or was injured or sued, or the like. And I can not say that the rule is very reasonable, as a man, contrary to the idea stated in the old books that a man can have but one Christian name, may by baptism, confirmation, or otherwise take and use two as well as one Christian name; but the rule stated seems to be well settled.

I do not forget that the question in this case occurs in the description of a writing which the rule of pleading requires to be exactly accurate; but if once we say that a middle name is no part of the name, it is as though it were left out. In *Keen* v. *Meade*, 3 Pet. 1, it was strongly intimated in the opinion that "the entire omission of a middle letter is not a misnomer or a variance." In *Milk* v. *Christie*, 1 Hill, 102, it was held that a "middle letter in a name is no part of it, and a variance in this respect between a written contract, as set forth in the pleadings, and that produced in evidence, is immaterial." So in *Bratton* v. *Seymour*, 4 Watts, 329; *Thompson* v. *Lee*, 21 Ill. 242; *McKay* v. *Speak*, 8 Tex. 376. In *O'Brannon* v. *Saunders*, 24 Gratt. 138, a declaration described a judgment as against John S. Barbour, whereas it was against John S. Barbour, Jr., and it was held that "Jr." was no part of the name, and there was no variance.

Though the question is not precisely the same, it has been held in even criminal cases that where the person injured is named with a middle name, and the proof is that he has no middle name, or *vice versa*, the variance is immaterial. *Tucker* v. *People*, 122 Ill. 583 (13 N. E. Rep. 809); *Choen* v. *State*, 52 Ind. 347 ; *People* v. *Ferris*, 56 Cal. 442. In *Ming* v. *Gwatkin*, 6 Rand (Va.) 551, a variance between writ and declaration as to initial of middle name was held fatal. The case is doubtful. Just the contrary was held in *Dabneys* v. *Knapp*, 2 Gratt. 355, as to difference in names of Samuel P. and Samuel B. Christian. The Ming case was cited, but not followed. Besides, the Ming Case was under a statute which did not cure a defect in judgment by default. *Hatcher* v. *Lewis*, 4 Rand. (Va.) 152 ; *Wainwright* v. *Harper*, 3 Leigh. 270.

Let us grant, however, that at common law this would be a variance. What then ? It is cured by the statute of jeofails. The defendants pleaded *nil debet* and payment. Chapter 134, § 3, of the Code, provides that "no judgment or decree shall be stayed or reversed * * * for any defect, imperfection, or omission which might have been taken advantage of on demurrer or answer, but was not so taken advantage of." This action was upon a promisory note. If it had been based on a specialty, for this variance the proper course would have been to crave oyer of the specialty, and demur for the variance, or object to the admission of the instrument as evidence, or an instruction to the jury to disregard it, or, which is the same, striking it out as evidence. 4 Minor, Inst. 814.

But this case was decided upon the defendant's demurrer to the plaintiff's evidence ; and it is argued that on a demurrer to evidence the court must take notice of the variance, and disregard the bond, as if there had been such demurrer or objection to its admission or instruction to disregard it, and there had been a general verdict. The only difference is that in this case the court tried the case on such demurrer, but there was no objection to the note or variance in any form. Here stands the judgment. The statute is directed to this Court as the appellate tribunal, and if this Court would execute the purpose of the statute it

would not regard the fact that the judgment was rendered upon demurrer to evidence.

The plain purpose of the statute is that, after trial and judgment, such judgment shall not be reversed for defects which could have been used to defeat a judgment, but were not so used, to cure slips and missteps not assigned before judgment, and not entering into the essential justice of the case. In case of judgment upon demurrer to evidence there has been a jury trial, on which objection to a variance could have been made, and the only difference between such case and one without demurrer to evidence is that the verdict is conditional upon such demurrer. So I do not see why the fact that the judgment is upon demurrer to evidence should take the case out of the benefit of the statute. The party has never hinted his reliance upon the variance until he reaches the appellate court.

See what hardship and injustice would be inflicted by holding otherwise. The party does not crave oyer, and demur, and makes no objection to the introduction of the bond before the jury. Had he done so, the other party would ask leave to amend, or suffer nonsuit; or if he later had doubts, after such objection, he could ask to withdraw his joinder in demurrer, and save himself from the hurt of the variance; but, in the absence of any such objection, he goes on to judgment, and then his adversary asks this Court to reverse the judgment, and render final judgment for him upon such demurrer to evidence.

But it is said that the statute cures only defects which could have been taken advantage of by demurrer, and that, as in an action upon an unsealed instrument, there need be no profert, and that craving oyer and demurring because of variance between the declaration and instrument sued upon is applicable only to an action on a sealed instrument, and therefore the statute does not apply to such case. Literally it does not, but it is a highly remedial statute, and ought to be liberally construed and applied to attain its purpose. Can we reasonably say that the lawmaker intended it to cure defects in an action of debt on a bond, and leave the same defects uncured in an action of debt on a note? I think not. Shall the mere fact that technically there can

not be oyer and demurrer for a variance in an action upon a parol contract, but the objection must be taken by objection to the instrument's going in evidence, or by instruction to disregard it if already in evidence, thwart the curative quality of the statute? I think not. We must say that such a case, though not within the letter, yet is within the spirit, of the statute.

I think Judge HAYMOND's opinion in *Holliday* v. *Myers*, 11 W. Va. 276, will plainly sustain us in this ruling. He properly gives the statute in question broad and liberal construction and application. Where a declaration states a case imperfectly, the statute, after judgment without objection to the defect, intends to cure it; but not where the declaration states no case at all. The opinions of Judge LEE in *Kennaird* v. *Jones*, 9 Gratt., at page 189, and in *Hitchcox* v. *Rawson*, 14 Gratt. at page 538, and of Judge MONCURE in *Boyles* v. *Overby*, 11 Gratt. 202, in their construction of the statute, are to same effect. See *Land Co.* v. *Karn*, 80 Va. 589, 595.

If the declaration states a defective title or cause of action, though it state it well, or if it state no title or cause of action at all, neither common law nor statute of jeofails helps the judgment. If it states a defective title, it shows that there is no right to recover; if it states no title, the presumption is irresistible that the plaintiff could not have made out a case by proof on the trial. But if it states a good title, but states it defectively, it is fair to say that the plaintiff on the trial proved a good case, else the jury would not have found for him, and the statute cures the defective statement. 2 Tuck. Comm. 312; *Chichester* v. *Vass*, 1 Call, 83; *Fulgham* v. *Lightfoot*, Id. 250; opinion in *Laughlin* v. *Flood*, 3 Mumf. 273.

The only difficulty is to apply the rule to particular cases. In *Davis* v. *Miller*, 14 Gratt. 19, Judge MONCURE said that an objection of variance between allegation and proof might have been raised in the Circuit Court by motion to exclude evidence, but not after judgment. In *Smith* v. *Lawson*, 18 W. Va. 212, it was held that such variance can only be taken advantage of by motion to exclude the evidence or instruction to disregard it. The Court tried the

case there without a jury. There was as much reason to say this Court would regard the variance as there is in this case of judgment on demurrer to evidence. I will add another reason, which, as I think, would bring the 'case literally under the statute, though the action was not on a sealed instrument. The declaration makes profert of the note. This being so, though irregular, yet the defendant could have accepted the proffer of oyer, and demurred for the variance.

The next point of variance is that the declaration alleges that several defendants made a note, and thereby they each of them promised, *etc.*, not saying they promised, or they each of them promised; in other words, the declaration makes the note several, while the note in evidence is joint and several. I shall not discuss the intricate question of when a contract imposes a joint, or a several, or a joint and several, obligation. Concede that the declaration states a several liability; then, the point having been in no wise made until now, after judgment, it can not avail, for reasons above stated.

The next point of variance is that the note produced draws eight per cent. interest from its date, 28th November, 1890, while the declaration demands the debt, with interest from the 28th November, 1891. There is no misdescription of the note in the declaration, but the demand of the declaration is for a less rate of interest, and for a shorter time, than the note would call for. It is not a question of variance between the note and its description in the declaration, but a variance between the demand and the right shown. Technically the one should correspond with the other, but I have seen no case saying that a declaration in debt would be bad in demanding a less sum than the note pleaded calls for. I do not think it would.

In *Hammitt* v. *Bullett,* 1 Call 492, the declaration demanded the debt only, without interest, while the bond called for interest. The court held that the defendant shall not be allowed to object to errors in pleading which are for his benefit, President PENDLETON saying, "He had no right to complain of it as an error, if it be one." Similar reasons would apply where less interest is demanded than

that called for by the note. Another bar against this point is this : The defendant could surely have demurred to the declaration for this defect. Had he done so, I think the defect would be ignored on demurrer under section 29, c. 125, Code, providing that "on demurrer (unless it be to a plea in abatement) the court shall not regard any defect or imperfection in the declaration or pleadings, whether it has heretofore been deemed mispleading or insufficient pleading or not, unless there be omitted something so essential to the action or defence that judgment can not be given according to law and the very right of the case." And certainly, if the objection would not be good on demurrer, it can not be good after judgment, without demurrer. And even if it would have been good on demurrer, the defect would be now cured, after judgment, by section 3, c. 134, above quoted, for reasons above stated. So we hold that the assignment of error based on variance can not be sustained.

The next assignment of error is that some of the defendants are makers and the others are not makers, but guarantors, of the note sued upon, and that a joint action can not be sustained against makers and guarantors. That legal proposition is correct. The liability of a maker is primary; that of a guarantor secondary. But we hold that the plaintiff has a right to treat these defendants all as makers, or some as makers and others as guarantors, just as he may prefer, and sue them accordingly.

Certain ones of the defendants made the note for the purpose by it to raise money for a business enterprise, while certain others, for their accommodation, and to give credit to the note and secure the money, indorsed their names on its back. The note was left blank as to the payee and rate of interest. They so signed and indorsed their names before delivery. The note, in this condition, was taken to Long, and he agreed to furnish the money for the note, and his name was inserted as payee, and the rate of interest was also inserted, and he furnished the money, and the note was delivered to him. He had the right to elect in what character he would treat them. He could treat some as makers, others as guarantors, or all as original promisors; that is, as makers.

I shall not discuss the principles upon which this doctrine rests, as to do so would be simply repetition of elaborate discussion which has been already devoted to the subject to be found in books readily accessible, but shall deem it sufficient simply to refer to them. *Burton* v. *Hansford*, 10 W. Va. 470; *Powell's Case*, 11 Gratt. 822; *Good* v. *Martin*, 95 U. S. 95; *Orrick* v. *Colston*, 7 Gratt. 189; 1 Pars. Cont. 243; Sto. Prom. Notes, §§ 473, 475; Rand. Com. Paper, §§ 66, 829; 1 Daniel, Neg. Inst. § 713*a*; *Ray* v. *Simpson*, 22 How. 241; *Douglass* v. *Scott*, 8 Leigh, 43. The argument of Mr. Boggess in *Kearns* v. *Montgomery*, 4 W. Va. 29, is a strong presentation of this doctrine upon authority. The decision to the contrary in that case, disapproved in *Burton* v. *Hansford*, 10 W. Va. 471, is against the current of authority, and not sound. The opinion does not refer to three prior Virginia decisions of binding authority, above cited. No authority is cited in the opinion.

In this case it is contended that it was not the understanding of the parties that they were to be liable as makers but only as guarantors, liable in default of payment by the makers. Now, there was really no such understanding, even between the makers and those who put their names on the back. The latter say they thought they were to be, or, rather, that they would be, only so bound. Their intention was to so bind themselves. First, there was then no payee's name in the note, and any understanding between these parties (there really was no understanding in the sense of agreement) would be wholly unavailing, unless communicated to Long prior to delivery of the note. As the note was when delivered, the law gave him right to treat all as makers, and he, being a party to the contract, was entitled to know any understanding, and elect to accept or refuse on such terms. *Watson* v. *Hurt*, 6 Gratt. 633; opinion in *Burton* v. *Hansford*, 10 W. Va. 481.

Even had the parties putting their names on the back of the note done so with the distinct condition that they were to be bound only as guarantors, yet, as they delivered it to the makers, such condition would be inoperative as against Long, unless the condition was communicated to him, under well-settled principles, because of delivery to such

maker.  *Little* v. *Cozad*, 21 W. Va. 183 ; *Nash* v. *Fugate*, 24 Gratt. 202.   The note would be taken by him with such right, and to have such force as the law conceded to it. Where one of two parties must suffer, he who put it in the power of another to inflict the wrong must bear the burden.   The judgment is

AFFIRMED.